IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 17-cv-01903-MSK-KLM

**BAYAUD ENTERPRISES, INC.,** and
**SOURCEAMERICA,**

    Plaintiffs,

v.

**U.S. DEPARTMENT OF VETERAN'S AFFAIRS,**
**UNITED STATES OF AMERICA,** and
**ROBERT WILKIE,**

    Defendants.

___

**OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**
___

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Emergency Motion for Temporary Restraining Order **(# 40)**.

## FACTS

Although this case involves complex questions of statutory analysis, the operative facts, as set forth in the Amended Complaint **(# 39)**, are straightforward. Two federal statutes, the Javits-Wagner-O'Day Act ("JWOD"), 41 U.S.C. 46 *et seq.*, and the Veteran's Benefits, Health Care, and Information Technology Act ("VBA"), 38 U.S.C § 8101 *et seq.*, are arguably applicable and sometimes come into conflict.

JWOD seeks to create employment opportunities for the blind and severely disabled, and does so by requiring federal agencies seeking to purchase goods and services to make such purchases, whenever possible, from eligible non-profit agencies employing such persons. 41

U.S.C. § 8503-04.  JWOD is implemented through a statutorily-created agency ("AbilityOne") that maintains a "procurement list."  The procurement list identifies products and services made available by eligible employers that meet the requisite statutory criteria.  JWOD requires that federal agencies intending to purchase goods or services found on a procurement list obtain them from the JWOD-eligible business(es).

The VBA seeks to promote veteran-owned businesses, and does so by requiring the Veteran's Administration ("VA") to purchase goods and services from such businesses in certain circumstances.  38 U.S.C. § 8127.  Needless to say, in circumstances where the VA seeks to purchase goods and services where there is both a supplier on the AbilityOne procurement list and veteran-owned businesses seeking to supply the products, the statutes appear to give conflicting instructions as to which supplier must be given the contract.

The VA has taken various steps and implemented various guidelines and instructions that seek to resolve that the conflict.  In 2017, the VA announced a policy ("the 2017 Class Deviation") that attempted to resolve the conflict by prioritizing purchases from JWOD-eligible entities, but only with regard to products and services that had been listed on a procurement list as of January 7, 2010 or earlier; any products or services the VA that were not on that 2010 list would be purchased pursuant to the VBA's veteran preferences.

Several JWOD-affiliated entities, including the Plaintiffs herein, commenced litigation in various fora challenging the 2017 Class Deviation.  Bayaud Enterprises, one of the Plaintiffs here, is an entity that employs blind and severely disabled individuals in fulfilling several contracts with the VA, providing medical transportation services, mailroom operations, and switchboard services.  SourceAmerica, the other named Plaintiff here, is an agency that

represents the interests of JWOD-eligible employers generally, and sues here in a representative capacity.

Although Bayaud alleges that the services it provides have been listed on the procurement lists since at least 2007, it contends that the VA informed it that, due to the 2017 Class Deviation, the VA would be considering whether veteran-owned businesses were providing the same services when it came time to renew Bayaud's contracts. As a consequence, the Plaintiffs commenced this action **(# 1)**, alleging that the 2017 Class Deviation was impermissible in various respects, including that it violated the requirements of JWOD and that it was promulgated without adequate notice-and-comment procedures in violation of the Administrative Procedures Act and the Constitution's guarantee of Due Process protections.

In the interim, other legal challenges to the 2017 Class Deviation were percolating through other federal courts. Most notably, a veteran-owned supplier of eyewear challenged both the pre- and post-2010 listings of various eyecare products and services on the JWOD-favored procurement list and sought an injunction requiring the VA to apply the VBA's preferences for veteran businesses to its purchases of eyewear products. The Court of Federal Claims agreed with the supplier and enjoined the VA to apply the VBA's provisions to any future contracts for the purchase of eyewear. The U.S. appealed the matter to the Federal Circuit, and in anticipation that the Federal Circuit's ruling on the question would prove dispositive, this Court stayed proceedings in this case pending the outcome of that appeal.

In October 2018, the Federal Circuit affirmed the Court of Claims. *PDS Consultants, Inc. v. U.S.*, 907 F.3d 1345 (Fed. Cir. 2018). Although the Federal Circuit's *PDS* opinion is central to this case, only a brief summary is needed here. The court rejected the government's argument that JWOD applied to all contracting decisions, but determined that the VBA applied

only to <u>competitive</u> decisions – *i.e.* that the VBA's preferences only came into play after a contemplated contract had already passed through the JWOD's mandatory contracting filter, and was then to be competitively-bid. Instead, the Federal Circuit held that the VBA applied to "all contracting determinations." 907 F.3d at 1358. The court applied the canon of statutory construction that a more specific statute (the VBA being applied only to VA contracting decisions, and only where sufficient numbers of veteran-owned businesses compete) takes precedence over a more general one (JWOD applying to all federal contracting decisions). 907 F.3d at 1359. It also noted that Congress had included an exclusion for JWOD-eligible contracts in prior legislation, but had not included such language in the VBA. *Id.* Finally, the court concluded that, where two statutes conflict, the later-enacted statute – here, the VBA -- should be given controlling effect. *Id.* Thus, the Federal Circuit ruled that "where a product or service is on the [procurement] list and ordinarily would result in the contract being awarded to a nonprofit qualified under the JWOD, the VBA unambiguously demands that priority be given to veteran-owned small businesses. . . We find that, by passing the VBA, Congress increased employment opportunities for veteran-owned businesses in a narrow category of circumstances, while leaving intact significant mechanisms to protect such opportunities for the disabled." *Id.* at 1360.

Almost immediately upon issuance of the Federal Circuit's Mandate in *PDS*, the VA issued additional purchasing guidance to its employees and suppliers ("the 2019 Class Deviation"). The 2019 Class Deviation, adopting the language from *PDS* quoted above, concluded that the VBA takes priority over JWOD in all VA contracting decisions. Thus, it directs that VA contracting officers first apply the provisions of the VBA, giving preference to any eligible veteran-owned business, and to proceed to award contracts to entities on the AbilityOne procurement list only if no such eligible veteran-owned business bids. The Plaintiffs

here then filed an Amended Complaint **(# 39)**, alleging that the 2019 Class Deviation violates the APA, the Due Process clause, and the Rehabilitation Act.

The Plaintiffs have also moved **(# 40)** for a Temporary Restraining Order enjoining the VA from implementing the 2019 Class Deviation and requiring it to award contracts consistent with JWOD pending the outcome of this case. They argue that this Court should conclude that *PDS* was wrongly-decided, that JWOD's provisions should be deemed to preempt the VBA's where the statutes conflict, and that allowing the VA to reassign the contracts Bayaud (and, more generally, those of SourceAmerica's members) currently holds would result in many otherwise marginally-employable disabled individuals losing the ability to work and support themselves.

## **ANALYSIS**

Fed. R. Civ. P. 65(b)(1) provides certain threshold requirements that must be satisfied for a party to obtain provisional relief on an *ex parte* basis: (i) the movant must establish the pertinent facts demonstrating imminent and irreparable harm by means of an affidavit or verified complaint; and (ii) the movant's counsel must certify, in writing, the efforts made to give notice to the opposing side and the reasons why such notice should not be required. Moreover, the movant must also establish the traditional factors for obtaining injunctive relief, namely: (i) that the movant will suffer immediate and irreparable harm if an injunction does not issue; (ii) that the movant is likely to succeed on the merits of its claim(s); (iii) that the balance of equities favors the movant; and (iv) that the requested injunction is not adverse to the public interest. *See Taxsalelists.com, LLC v. Rainer*, 2009 WL 4884273 (D.Colo. Dec. 11, 2009 ) (unpublished); *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1233 n. 2 (10th Cir. 2011).

The Court begins by noting that, contrary to Fed. R. Civ. P. 65(b)(1)(B), the Plaintiffs' counsel has not certified in writing the efforts made to give notice of this motion to the

Defendants, nor the reasons why such notice should not be required. Indeed, Docket # 41 suggests that the Plaintiffs' motion took the Defendants entirely by surprise. The failure to comply with Rule 65(b)(1)(B) is, itself, a basis to deny the Plaintiffs' motion.

Turning to the requirements of Rule 65(b)(1)(A) – the need for affidavits or a verified complaint establishing the requisite facts, the Plaintiffs have tendered an affidavit[1] from Bayaud's Executive Director, David Henninger.[2] Mr. Henninger's affidavit states that one of Bayaud's contracts with the VA – for medical transportation services, for which Bayaud employs 17 disabled workers -- is due to expire on June 24, 2019.[3] (Bayaud's two other contracts with the VA expire in September 2019 and March 2020. A total of 42 disabled Bayaud employees are involved with these contracts.) However, it is not clear from Mr. Henninger's affidavit as to

---

[1] Both the Plaintiffs' Amended Complaint **(# 39)** and motion **(# 40)** fail to comply with the Court's requirements for electronically-filed documents. In both instances, the Plaintiffs' substantive filings of approximately 40 pages are followed immediately by nearly 100 pages of exhibits, all in a single docket entry. The Court's electronic filing procedures require exhibits to be filed as attachments, separately from the main document. *See generally* D.C. L. Civ. R. 5.1(a) and ECF Civil Procedures v. 6.1, § 4.8(c). The Plaintiffs are advised that future violations of the electronic filings procedures will result in the offending documents being stricken.

[2] The Plaintiffs also tender the affidavit of Vincent Loose, President of SourceAmerica. Mr. Loose states that there are 63 VA contracts issued nationwide to JWOD-eligible businesses that are likely to be terminated by October 1, 2019 as a result of the 2019 Class Deviation, likely displacing as many as 600 disabled employees. The Court is prepared to accept these facts from Mr. Loose as being within Mr. Loose's personal knowledge in his capacity as an officer of SourceAmerica. But Mr. Loose goes on to recite facts about certain specific entities that have allegedly been contacted by the VA and told that their existing contracts will be awarded to other entities as a result of the 2019 Class Deviation. Mr. Loose and SourceAmerica do not appear to be recipients on the e-mails that Mr. Loose refers to, nor is it clear how Mr. Loose purportedly obtained his personal knowledge of the facts relating to these particular businesses. It appears, then, that these portions of Mr. Loose's affidavit are inadmissible hearsay.

[3] Mr. Henninger's affidavit states that the contract has "option periods" that allow it to be renewed through 2023. He does not explain how such options work – that is, whether it is the VA or Bayaud (or perhaps both) that decide whether to continue the contract. The Court will assume that the VA has the ability to decline to exercise the option and allow the contract to expire as of June 24, 2019.

what will occur upon expiration of the contracts. Mr. Henninger states that "Bayaud expects" that the VA "will re-compete" the contracts under the VBA at the end of their current terms, and states that Bayaud "will be unable to compete" for those contracts, but notably, neither Mr. Henninger's affidavit nor any other evidence in the record indicates that there are indeed veteran-owned businesses that would be eligible to compete for those contracts under the VBA. Even under the 2019 Class Deviation, the VBA appears to exist only as a filter, and that any contracts that are not awarded to eligible veteran-owned businesses would then pass through additional layers of requirements, including the requirement that they then be awarded pursuant to JWOD.

The Court finds that these facts fail to demonstrate that the Plaintiffs will imminently suffer an irreparable injury if *ex parte* injunctive relief is not granted. First, the Court notes that an entity like Bayaud will largely suffer only monetary losses if the contracts are eventually re-bid to other suppliers under the 2019 Class Deviation. Purely monetary losses do not suffice as irreparable injuries for purposes of granting injunctive relief. The Plaintiffs argue that the loss of the contracts will irreparably affect the employment prospects of the disabled workers that make up their workforce, citing to various cases in which individuals were able to obtain injunctive relief based on the threat of irreparable harm to their own employment prospects. *Citing Enyart v. Natl. Conf. of Bar Examiners,* 630 F.3d 1153, 1165-67 (9th Cir. 2014) (failure to accommodate putative bar exam taker's disability) *and Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (failure to issue driver's licenses to working-age immigrants). But it is not clear that Bayaud has standing to seek injunctive relief to vindicate an injury – loss of career prospects – for its employees as compared to Bayaud itself. *See generally Colorado Outfitters Assn. v. Hickenlooper*, 823 F.3d 537, 550 (10th Cir. 2016) (associational standing requires party asserting it to show that the individuals it represents "would otherwise have standing to sue in

their own right"). The same is true for SourceAmerica: it serves as a representative of JWOD-eligible employers, not as a representative of the employees themselves.[4] Moreover, as noted above, the record contains only speculative assertions that, if the VBA's contracting preferences were elevated above JWOD's, the particular Bayaud contracts in question would be awarded to different recipients. Absent evidence that there are sufficient eligible veteran-owned businesses prepared to bid on the medical transportation contract in or about June 2019, the Plaintiffs' concerns that they will be displaced by operation of the VBA is largely speculative. Thus, the Court cannot say that the Plaintiffs have shown the likelihood of imminent, irreparable injury.

Moreover, the Court finds that the Plaintiffs have not shown a likelihood of success on the merits. The Federal Circuit's decision in *PDS* seems to conclusively resolve the friction between the VBA and JWOD, albeit to the Plaintiffs' detriment. To overcome that difficulty, the Plaintiffs argue to this Court that *PDS* "is wrong" and that this Court "should disregard it." Although the decisions of the Federal Circuit do not necessarily bind this Court, the *PDS* decision is powerfully persuasive, particularly in contrast to the circumstances present here. The Federal Circuit had the benefit of a fully-developed record and lower court decision, a three-judge panel having ample opportunity to research and ponder the issues, and no less than six different *amicus* entities (including SourceAmerica) contributing their own distinct perspectives on the questions. Here, on the other hand, the Plaintiffs seek injunctive relief on an *ex parte* basis, theoretically depriving the Court of even the opportunity to hear the Defendants' position in opposition, and request that the Court issue such a ruling on an emergency basis.

---

[4]   SourceAmerica argues that it has its own standing in this case because it receives its funding from its member entities based on the value of federal contracts they receive. But again, this argument indicates that SourceAmerica's own injury is merely monetary in nature.

This Court is loathe to conclude that its own rushed, one-sided assessment of the issue will inherently lead to a more "correct" result than did the Federal Circuit's deliberate and informed consideration. And in any event, although the Federal Circuit's analysis might legitimately be criticized in various respects, this Court cannot say that its reasoning is palpably incorrect. Congress has created a series of contracting preferences that are rife with internal conflict, and this Court cannot say, based on the brief amount of time that it has been given to consider the question, that the Federal Circuit hacked too aggressively when attempting to find a path through that thicket. Whether the rationale of *PDS* will ultimately stand the test of time (potentially even in this case) is a matter that this Court will not speculate upon; it is enough to note that the decision is not so plainly incorrect that this Court would conclude on an expedited basis that the Plaintiffs have shown a likelihood of succeeding on their contention that it was wrongly-decided.

Similarly, the Court declines to find at this point in time that the Plaintiffs' APA challenge against the 2019 Class Deviation is likely to succeed. Assuming (without necessarily finding) that the 2019 Class Deviation was subject to notice-and-comment provisions, it appears that the VA concluded that the 2019 Class Deviation was <u>required</u> by the Federal Circuit's decision in *PDS*. The Federal Circuit affirmed the Court of Claims' decision, which enjoined the VA from automatically entering into contracts with the JWOD-eligible supplier, even with regard to products and services that had been listed on pre-2010 procurement lists. 907 F.3d at 1353-54 ("the Claims Court . . . ruled that the VA is required to [apply the VBA procedures] for <u>all</u> procurements that post-date 2006, when the VBA was passed, and not just for those items added to the [procurement] list after January 7, 2010"). As such, it does not appear that the VA had the discretion after *PDS* to take any action other than that embodied by the 2019 Class

Deviation. In such circumstances, the APA's "good cause" exception to the notice-and-comment requirement might apply. *See* 5 U.S.C. § 553(b)(B). The 2019 Class Deviation notes that it "is needed to reflect language consistent with the Federal Circuit's decision in *PDS*" and that it understood this ruling to be "binding." Again, it may be that, in the fullness of time, the Plaintiffs' notice-and-comment arguments might be shown to be meritorious. But this Court is not prepared to find, on an emergency basis, that the record so clearly favors the Plaintiffs that *ex parte* injunctive relief should necessarily follow.

For purposes of efficiency, and because the VA is a federal agency, this Court will collapse the remaining two elements, the balance of equities and harm to the public interest, into a single analysis. To the Plaintiffs' credit, JWOD reflects a long-standing public policy encouraging the employment of vulnerable citizens and any impairment to the statutory contracting preferences created by JWOD runs the significant risk that these vulnerable employees will lose their jobs and the dignity of self-sufficiency that accompanies such jobs. At the same time, the VBA reflects another, equally-strong public policy encouraging the support of military veterans and their business ventures, that, Congress has determined, has not been fulfilled by prior contracting decisions by the VA. At bottom, the shift of a contract from a JWOD-eligible supplier to a VBA-eligible one seems to be a zero-sum change. Each job lost from the JWOD-eligible entity is, at least in theory, replaced with a job created by the VBA-eligible entity.[5] And although the Court recognizes the relative paucity of job opportunities for severely-disabled individuals, enjoining the VA to give priority to JWOD-eligible suppliers

---

[5] The record reflects that some VBA-eligible suppliers have given non-binding promises to attempt to hire disabled employees displaced from JWOD-eligible suppliers. Although the Plaintiffs are skeptical of such promises, it remains unclear precisely how much actual employment disruption might result from the change compelled by *PDS*.

would cause harm to the unknown putative employees of the VBA-eligible suppliers who themselves lose out on employment opportunities. As such, the balance of the equities is largely left in equipoise. But the public interest would be <u>most</u> harmed by a court like this one adding to the uncertainty by entering an injunction that contravenes the Federal Circuit's, whipsawing the VA into attempting to comply with two conflicting directives issued by two different courts. Ultimately, the decision as to how to allocate the federal government's considerable contracting power for the maximum benefit to all citizens is one that calls for careful calibration by Congress. Put differently, if Congress is dissatisfied with the consequences of the *PDS* decision, it can choose to clarify the matter legislatively.

Accordingly, this Court finds that the Plaintiffs have not carried their burden of demonstrating their entitlement to an *ex parte* Temporary Restraining Order under Rule 65(b). Ordinarily, upon denying a request for *ex parte* injunctive relief, the Court would nevertheless set the matter down for a hearing to determine whether a preliminary injunction hearing, on notice to the opponent, would be appropriate. But here, the Court notes that the injunctive relief the Plaintiffs request here is the entirety of the relief that they could achieve if they succeeded on the merits. *See* Docket # 40 at 16 (Plaintiffs conceding that they "cannot even seek monetary relief for the types of claims asserted here" and noting that the APA "provide[s] for declaratory and injunctive relief only"). In such circumstances, the provisions of Rule 65(a)(2) come into play. That rule provides that "the court may advance the trial on the merits and consolidate it with the hearing" on the request for preliminary relief. *See Holly Sugar Corp. v. Goshen County Co-Op. Beet Growers' Assn.*, 725 F.2d 564, 568 (10th Cir. 1984). The Court here intends to proceed in that fashion: it will defer the setting of any preliminary injunction hearing and direct the parties to the Magistrate Judge to set an expedited schedule for any discovery and other

necessary pre-trial proceedings or, as appropriate, for the compilation and submission of the administrative record and the filing of appellate-style briefs on the merits.

## **CONCLUSION**

For the foregoing reasons, the Plaintiffs' Emergency Motion for Temporary Restraining Order **(# 40)** is **DENIED**.

Dated this 10th day of June, 2019.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge