# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO
# SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 17-cv-01903-MSK-KLM

**BAYAUD ENTERPRISES, INC., and**
**SOURCEAMERICA,**

    Plaintiffs,

v.

**U.S. DEPARTMENT OF VETERAN'S AFFAIRS,**
**UNITED STATES OF AMERICA, and**
**ROBERT WILKIE,**

    Defendants.

## OPINION AND ORDER ON THE MERITS

**THIS MATTER** comes before the Court for resolution of the merits of the Plaintiffs' appeal on the administrative record. The Court has considered the administrative record **(# 57)**, the parties' briefing on the merits **(# 59, 60)**, and response and reply briefs **(# 61, 62, 63)**.

## FACTS

**I.**     **The Historical Legal Landscape**

When federal agencies procure certain products and services, Congress has directed that contracting preference be given to suppliers who meet certain criteria. Beginning in 1938, pursuant to the Javits-Wagner-O'Day Act ("JWOD"), preference was to be given to nonprofit entities that employed the blind or severely disabled. The JWOD directed the creation of a commission, known generally as AbilityOne, that maintained and published a list of products and services provided by such entities. 41 U.S.C. § 8503(a). JWOD further directed that "when the Federal Government purchases products" that appear on AbilityOne's procurement list,

1

"priority shall be given to products produced and offered for sale" by such nonprofit entities, and that the Government "shall procure the product or services from a qualified nonprofit agency" if available. 41 U.S.C. § 8503(d)(2), 8504(a).

In 2006, Congress passed the Veteran's Benefits, Health Care, and Information Technology Act ("VBA"), 38 U.S.C. § 8101 *et seq.* which implemented the "Rule of Two," that generally requires the VA to purchase goods and services from qualified veteran-owned businesses, if available. The VBA was intended to "increase contracting opportunities for small business concerns owned and controlled by veterans," the VBA directs that the Department of Veteran's Affairs ("the VA") to "award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans . . . if the contracting officer has a reasonable expectation that two or more [such businesses] will submit offers and that the award can be made at a fair and reasonable price." 38 U.S.C. § 8127(d).

Recognizing the apparent friction between the JWOD requirements that it purchase goods and services from entities on the AbilityOne procurement list and the VBA's requirements that it purchase goods and services from veteran-owned businesses, in 2010, the VA promulgated a directive to its contracting officers (hereafter "the 2010 letter"). *Docket # 57-2 (hereafter, "AR")* at 1-3. The 2010 letter concluded that "all items currently on the AbilityOne Procurement List as of January 7, 2010 will continue to take priority over the contracting preferences mandated [in the VBA]," but that "all new requirements will be subject to the contracting preferences mandated by [the VBA] prior to being considered for placement with the AbilityOne program." AR at 2. In other words, if a specific item or service had been on AbilityOne's list prior to January 7, 2010, the VA would give preference to that supplier in accordance with JOWD. But

2

for products or services that were added to AbilityOne's list after January 7, 2010, the VA would give preference to veteran-owned businesses over any JWOD-eligible suppliers.

In 2016, following a ruling by the U.S. Supreme Court on a related issue involving application of the Rule of Two, the VA issued a new policy statement. The July 25, 2016 "Class Deviation" (as such policy memos appear to be called) explains that, in circumstances where there are "mandatory sources" for products or services – *e.g.* where JWOD would require a purchase from a source on the AbilityOne list – the VBA's preference for veteran-owned businesses "does not apply." AR 49. Thus, under the 2016 Class Deviation, a distinction was made between "mandatory" contracting preferences, such as those created by JWOD, and "competitive" preferences, such as the preference for veteran-owned business in the VBA. The competition preference under the VBA would be considered only if the mandatory preference of the JWOD did not apply.

But the 2016 Class Deviation did not last long. On March 1, 2017, the VA amended the 2016 Class Deviation to clarify its priorities. Under the 2017 Class Deviation purchase of "supplies on the [AbilityOne] Procurement List are mandatory only if the supplies were added to the Procurement List prior to January 7, 2010." In all other circumstances, the VA instructed contracting officers to apply the Rule of Two, purchasing from AbilityOne-listed providers only if the "Rule of Two is not satisfied." AR 53-54.

In February 2018, the VA appears to change course again, promulgating a new Class Deviation that clarifies that "all supplies or services that are on the [AbilityOne] Procurement List . . . are mandatory sources."

## II. The PDS Controversy

Beginning in 2002, AbilityOne listed JWOD-eligible providers of certain eyeglass products and services and the VA had continuously purchased those products and services from the AbilityOne-listed providers. In 2016, AbilityOne expanded the list, adding new categories of eyeglass-related services and certifying JWOD-eligible providers as suppliers for the newly-listed products and services. In response, a veteran-owned business called PDS Consultants, Inc. ("PDS") advised AbilityOne that it provided products and services in the newly-identified categories. It suggested that, according to the VBA, the VA would be required to purchase products from PDS rather than the newly-identified suppliers on AbilityOne's list. AbilityOne disagreed.

PDS then commenced a bid protest in the U.S. Court of Federal Claims, and on May 30, 2017, the Court held that the VA was required to perform a Rule of Two analysis for <u>all</u> procurements made after 2006, not just those involving post-January 2010 additions to AbilityOne's list. In addition, it held that the VBA's requirements trumped those of JWOD. As a result, it enjoined the VA from entering into further contracts with the AbilityOne-listed supplier and directed the VA to perform a Rule of Two analysis regarding the eyewear products and services, presumably causing the VA to purchase those products and services from PDS (or another veteran-owned supplier) rather than the AbilityOne-listed supplier.

The VA appealed the Claims Court's *PDS* ruling to the Court of Appeals for the Federal Circuit. On October 17, 2018, the Federal Circuit affirmed the decision of the Claims Court. *PDS Consultants, Inc. v. U.S.*, 907 F.3d 1345 (Fed. Cir. 2018). Among other things, the Federal Circuit rejected the theory posited in the VA's 2016 Class Deviation – that JWOD created certain "mandatory" purchases that always took priority, whereas the VBA merely provided a

4

preference if the contract in question passed through JWOD's filter and entered into a realm of "competitive" bidding. The Federal Circuit explained that "by its express language, the [VBA] applies to all contracts – not only competitive contracts." 907 F.3d at 1358 (emphasis in original). Applying several canons of statutory construction, the Federal Circuit then concluded that the "requirements of the more specific, later-enacted VBA take precedence over those of the JWOD when the two statutes are in apparent conflict." 907 F.3d at 1359. "Thus," the Federal Circuit explained, "where a product or service is on the [AbilityOne] List and ordinarily would result in the contract being awarded to a nonprofit qualified under the JWOD, the VBA unambiguously demands that priority be given to veteran-owned small businesses." *Id.* at 1360.

The Federal Circuit issued its Mandate in *PDS* on May 20, 2019. AR 111. That same day, the VA issued a new Class Deviation that implemented the teachings of *PDS*. AR 118-122. Concluding that "current agency policy and procedures conflict with the Court's findings," and finding "urgent and compelling circumstances which necessitates immediate policy change and makes compliance with the traditional publication requirements impracticable," this 2019 Class Deviation promulgated a new requirement that, effective immediately, "the VA Rule of Two . . . must be applied prior to considering awarding a contract to an AbilityOne non-profit organization." AR 120-21.

### III. The Current Controversy

This action was filed in August 2017 after the Court of Claims' PDS decision. Plaintiff Bayaud Enterprises, Inc. ("Bayaud") is a JWOD-eligible service provider that then had contracts to provide medical transportation services, mailroom operations, and switchboard services at VA facilities in Colorado. Plaintiff SourceAmerica is a "central nonprofit agency" that represents

5

some 450 JWOD-eligible suppliers, providing them with information and assisting them in obtaining, complying with, and resolving disputes over contracts with federal agencies.

Shortly after the Claims Court decision in *PDS*, the VA advised Bayaud that, consistent with the Claims Court's analysis, it would not renew certain contracts Bayaud when they expired. The VA similarly advised SourceAmerica that it would not renew contracts with SourceAmerica's client agencies. Instead, the VA stated its intention to offer such contracts for bid by veteran-owned businesses under the VBA. *Docket # 1 at ¶ 62-68*.

Initially, the Plaintiffs alleged claims challenging the 2017 Class Deviation (and the Claims Court's conclusion in *PDS*). But after resolution of the PDS appeal, the Plaintiffs amended their pleadings. The current operative pleading is the Second Amended Complaint **(#2)**. It asserts five claims:

(i) that the implementation of the 2019 Class Deviation violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 553, because the VA failed to provide for notice-and-comment procedures before implementing it;

(ii) the implementation of the 2019 Class Deviation violated the APA, 5 U.S.C. § 706(2), because the VA's conclusion that the VBA takes precedence over JWOD is arbitrary and capricious and contrary to law;

(iii) that the VA's failure to require veteran-owned businesses it contracts with to, in turn, procure eligible services or products from the AbilityOne list is contrary to law, in violation of the APA, 5 U.S.C. § 706(2);

(iv) a claim, of uncertain provenance,[1] that the VA's adoption of the 2019 Class Deviation deprives the Plaintiffs of procedural due process and equal protection in violation of the 14th Amendment to the U.S. Constitution; and

(v) a claim that the 2019 Class Deviation violates the Rehabilitation Act, 29 U.S.C. §794(a), because it excludes disabled employees of entities like the Plaintiffs from participation in federal programs "solely on the basis of their disability."

Having submitted the administrative record **(# 57)**, the parties have filed hybrid documents that serve as both briefing on the merits (on the administrative appeal claims) and dispositive motions (on the constitutional and Rehabilitation Act claims).

The Defendants' briefing **(# 59)** also moves to dismiss the Plaintiffs' second and third claims, alleging that this Court lacks subject-matter jurisdiction over those claims because the Tucker Act, 28 U.S.C. § 1491(b)(1), vests exclusive jurisdiction in the Court of Federal Claims over disputes by parties objecting to alleged violations of statute or regulation in connection with a procurement. The Defendants also seek dismissal for lack of jurisdiction over the Plaintiffs' APA claims under 5 U.S.C. § 706 because the Plaintiffs have an adequate remedy at law, again invoking the Tucker Act's provision of jurisdiction in the Court of Federal Claims over contracting disputes. Finally, the Defendants move to dismiss the Plaintiffs' constitutional and Rehabilitation Act claims pursuant to Fed. R. Civ. P. 12(b)(6).

The Plaintiffs' briefing **(# 60)** seeks summary judgment on each of the Plaintiffs' claims (as well as a grant of appropriate injunctive relief preventing the VA from implementing the

---

[1] The Court will assume that the Plaintiffs bring this claim pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

2019 Class Deviation and re-bidding the Plaintiffs' contracts). The mater is now ripe for resolution.

## ANALYSIS

**A. Jurisdiction**

The Defendants contend that this Court lacks subject matter jurisdiction over "most of Plaintiffs' claims." Although they do not identify which particular claims, it appears from their argument that they dispute the Court's jurisdiction to hear the Plaintiffs' second and third claims, which allege that VA decisions violate Section 706 of the APA. The APA contains an express waiver of the United States' sovereign immunity to suit, allowing for judicial review of claims by persons "suffering a legal wrong because of agency action," if only non-monetary relief is sought. 5 U.S.C. § 702. However, that same statutory provision limits the scope of its waiver of sovereign immunity, providing that its procedures do not "confer[ ] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." The Defendants argue that the Tucker Act, 28 U.S.C. § 1491(b)(1) vests exclusive jurisdiction in the Court of Federal Claims for "any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement."[2] Thus, the question presented is whether the Plaintiffs' APA Section 706-based challenges are ones that concern a "violation of a statute . . . in connection with a procurement or a proposed procurement."

In response, the Plaintiffs argue that they are not challenging the VA's application of the 2019 Class Deviation to any specific procurement or proposed procurement, but rather, are

---

[2] Although the text of the Tucker Act purports to grant concurrent jurisdiction to federal district courts as well as the Court of Federal Claims, Congress subjected the grant of district court jurisdiction to a "sunset provision" that terminated in 2001. Now, the Court of Federal Claims has "exclusive jurisdiction to review government contract protest actions." *Emery Worldwide Airlines, Inc. v. U.S.*, 264 F.3d 1071, 1079-80 (Fed. Cir. 2001).

8

challenging the adoption and legality of the Class Deviation itself. In *Alphapointe v. Department of Veteran's Affairs*, ___ F.Supp.3d ___, 2019 WL 7370369 (D.D.C. Aug. 30, 2019), the court considered the same jurisdictional question is a case presenting essentially the same facts: an AbilityOne-listed supplier challenging the VA's adoption of the 2019 Class Deviation.[3] Relying on the Federal Circuit's decision in *Southfork Systems, Inc. v. U.S.*, 141 F.3d 1124, 1127-28 (Fed. Cir. 1998), the court in *Alphapointe* concluded that the jurisdictional question was "a close call," but found that an APA challenge to the adoption of the Class Deviation itself did not present a question relating to a particular procurement decision that the Tucker Act reserved to the Court of Federal Claims.

The Defendants argue in reply that the Plaintiffs' Amended Complaint specifically discusses the fact that the VA was declining to exercise options to extend Bayaud's contracts as a result of the 2019 Class Deviation, thus arguing that the Plaintiffs are indeed challenging specific procurement decisions by the VA. *Alphapointe* addressed this situation as well, observing that in addition to challenging the 2019 Class Deviation on its own, the plaintiffs there sought additional relief in the form of an injunction preventing the VA from "terminating . . . any contracts that the Plaintiffs have." The *Alphapointe* court explained that "this latter requested remedy exceeds what the court can do under the APA," but found that it nevertheless could exercise jurisdiction to consider Alphapointe's well-pled APA claims that attacked the 2019 Class Deviation generally.

---

[3] *Alphapointe* presented the jurisdictional question in the context of the VA opposing Alphapointe's motion seeking a preliminary injunction suspending the 2019 Class Deviation. The court found that it had sufficient subject-matter jurisdiction to consider the injunction motion on its merits, but denied ultimately found that Alphapointe had not shown that it was entitled to an injunction.

This Court notes that the Plaintiffs' Prayer For Relief here does not specifically seek injunctive relief specific to Bayaud's existing contracts with the VA. Even if it did, this Court would find *Alphapointe*'s reasoning and approach to the jurisdictional question to be persuasive. Thus, for the reasons stated in *Alphapointe*, this Court finds that it has subject-matter jurisdiction to consider the Plaintiffs' general APA challenges to the manner in which the VA adopted the 2019 Class Deviation, even if the Court might not have jurisdiction to grant any relief to the Plaintiffs with regard to specific contracts, that being in the essence of a procurement decision. Thus, the Court proceeds to the merits of the Plaintiffs' claims.

B. **Notice and comment claim**

This claim has morphed somewhat during the briefing. As originally presented in the Amended Complaint, this claim exclusively alleged a violation of the APA, 5 U.S.C. §553(b). *Docket # 52 at ¶ 70-77.* The discussion of this claim in the Plaintiffs' opening brief spans about 10½ pages, roughly 9 of which argue that the VA violated the APA. *Docket # 60 at 48-57.* The final portion of this section of the brief is entitled "Defendants Violated Other Applicable Rulemaking Procedures," and contends that the VA also violated 41 U.S.C. § 1707 (a statute governing the Office of Federal Procurement Policy), provisions in the Federal Acquisition Regulation, and the Veterans Administration Acquisition Regulation.

In response, among other arguments, the Defendants argue that 5 U.S.C. § 553(a)(2) provides that the APA's notice-and-comment requirements do not apply to "a matter relating to . . . contracts." The Defendants object to the Plaintiffs' argument that the failure to provide notice and comment violated other statutes or regulations because "that new claim for relief was not included in Plaintiffs' complaint and is being raised for the first time in a response brief."

In reply, the Plaintiffs appear to withdraw any claim based on the APA. *Docket # 63 at 9* ("Plaintiffs will withdraw any reliance on Section 553"). Instead, they press their argument that the VA's failure to provide a notice and comment violated 41 U.S.C. § 1707 and various procurement-related regulations. The Plaintiffs argue that they "did plead the VA's failure to comply with these statutory and regulatory provisions in the operative complaint," citing to, effectively, a single introductory paragraph in the Amended Complaint that mentions that the 2019 Class Deviation "did not satisfy the notice-and-comment requirements of the [APA], the Office of Federal Procurement Policy Act, and the [Federal Acquisition Regulation]." *Docket # 52 at ¶ 13*.

The Court agrees with the Defendants that the Amended Complaint fails to give adequate notice that the Plaintiffs' first claim for relief involved 41 U.S.C. § 1707 and various regulatory provisions. Nothing in the 8 paragraphs that describe Claim One give the Defendants fair warning that that claim asserted violations of any statute or provision other than 5 U.S.C. § 553. Although the Amended Complaint makes passing reference to Paragraph 13, as part of the Amended Complaint's introductory section and Claim One incorporates by reference everything else in the Amended Complaint, the Court cannot conclude that these provisions provided the Defendants with fair notice that Claim One encompassed all of the legal contentions the Plaintiffs now assert. Incorporation by reference of all prior allegations is stylistic boilerplate that most reasonable attorneys properly ignore. (Indeed, the vast majority of allegations so incorporated are utterly irrelevant to Claim One's contention that the VA failed to give adequate notice and solicit comment before implementing the 2019 Class Deviation.) The Amended Complaint is replete with references to statutory and regulatory authorities of varying relevance, making it impossible for a defendant to ascertain which references are purporting to support

claims and which are merely providing background or color.  Accordingly, the Court finds that the Plaintiffs' Amended Complaint does not provide fair notice that Claim One asserted any claim other than one under 5 U.S.C. § 553, which the Plaintiffs have now withdrawn. Accordingly, the Court finds that the Defendants are entitled to dismissal of Claim One.

### C.  Arbitrary and Capricious/Contrary to Law claims

The Plaintiffs' second and third claims allege that the 2019 Class Deviation is arbitrary and capricious or contrary to law, thus violating 5 U.S.C. § 706(2)(A).  Claim Two alleges that the 2019 Class Deviation is contrary to law because it fails to give due effect to JWOD and to other VA procurement regulations.  Claim Three alleges that the VA's procurement policies are contrary to law in two additional respects: (i) that the VA fails to enforce the requirements of 48 C.F.R. § 8.002(c), which requires VA <u>contractors</u> to give preference to AbilityOne-listed suppliers when the <u>contractors</u> enter into subcontracts for the purchase of eligible goods and services; and (ii) that the VA has improperly "indicated its intent to apply the Rule of Two" to both the initial decision to enter into a contract and in the decision as to whether to exercise an option to continue an existing contract; the Plaintiffs contend that the latter practice violates various regulatory provisions.

The Court addresses Claim Three first, finding that the Plaintiffs have not presented any meaningful argument  that supports either prong of that claim.  The Plaintiffs primary briefing addresses the issue of the VA not requiring contractors to subcontract with AbilityOne-listed supplies when available in two sentences, acknowledging that the 2019 Class Deviation "is silent regarding the requirement that the VA's prime contractors . . . must procure products or services from the [AbilityOne] Procurement List," and arguing that "[i]t is critical that any VA rule prioritizing the VBA Rule of Two over the JWOD Act reaffirm this requirement."  (The latter

comment reflects the fact that this argument is presented in conjunction with the Plaintiffs' argument regarding Claim One – the VA's failure to require adequate time for comment – and not in the Plaintiffs' purported discussion of Claims Two and Three.) Certainly, nothing in the record establishes that the VA does not currently enforce 48 C.F.R. § 8.002(c), nor indicate that it will refuse to do so via the 2019 Class Deviation. Accordingly, the Court finds that the Defendants are entitled to judgment on this portion of Claim Three.

Likewise, the Plaintiffs' briefing contains limited argument regarding whether the VA's legal right to apply the 2019 Class Deviation when deciding whether to exercise options to extend existing contracts. It acknowledges that the Class Deviation "is silent" on this point and, again, it offers that argument only for the purpose of demonstrating that the VA "would have benefitted greatly from providing the public with a full notice-and-comment period." There is some collateral evidence in the record[4] that suggests that the VA is indeed refusing the exercise contract options with AbilityOne-listed suppliers because it intends to offer the contracts to veteran-owned suppliers instead. But this Court cannot conclude that the 2019 Class Deviation's silence on this issue renders it "arbitrary and capricious" or "contrary to law." The most that can be said is that the 2019 Class Deviation is incomplete or that it does not fully spell out all the particulars of how the VA intends to apply JWOD and the VBA in all situations going forward.

---

[4] This evidence is not found within the Administrative Record filed by the parties at Docket #57. Rather, it is tendered by the Plaintiffs via the affidavit of Carla Goulart, presented as part of the Plaintiffs' "summary judgment motion." The Court has substantial doubts that such evidence is properly before the Court, both due to it falling outside the administrative record and because it is not clear that Ms. Goulart's recitation of the VA's communications with contractors avoids hearsay concerns. But the Court does not understand the Defendants to dispute the underlying fact that the VA appears to be refusing to exercise options with existing JWOD-eligible contractors and intends to re-bid the contracts pursuant to the VBA. Ultimately, that fact does not alter the analysis herein.

Short of a law that requires the VA to set forth all such policies in a single document – and the Plaintiffs identify no such law – the Court cannot say that the incompleteness of the 2019 Class Deviation renders in "contrary to law." It may be that the VA will issue separate policy guidance on that question (perhaps after providing notice of a proposed policy statement and soliciting comment). It may be that the VA does not intend to promulgate any fixed policy and will address that issue on a contract-by-contract basis (such that aggrieved contractors may challenge those decisions in the Court of Federal Claims under the Tucker Act). But neither these nor other possibilities bear on the question of whether the 2019 Class Deviation is "contrary to law" because it lacks such explication. There being no showing by the Plaintiffs that the incompleteness of the 2019 Class Deviation violates any law, the Defendants are entitled to judgment in their favor on Claim Three.

The Court then returns to Claim Two. This claim more directly challenges the legality of the 2019 Class Deviation, arguing that it is contrary to the statutory command of JWOD and various other regulatory provisions that enshrine JWOD's status as a primary source of contracting preferences. The Plaintiffs' briefing offers an extensive and formidable argument as to why the 2019 Class Deviation violates the requirements of JWOD, the VBA, historical application of the Federal Acquisition Regulation, and various other sources of law. This Court need not extensively analyze, or even summarize, that argument because the entire thrust of that argument requires this Court to first conclude that the Federal Circuit's *PDS* decision was wrongly-decided. Because this Court is unwilling to take that first step down the path presented by the Plaintiffs, the Court cannot conclude that the 2019 Class Deviation is either arbitrary and capricious or contrary to law.

The Court recognizes and appreciates the Plaintiffs' strategy that, by bringing this suit in a different forum, they can theoretically get a second bite at this particular apple. This Court is not technically bound by precedent from the Federal Circuit on cases of this type, and thus, could consider the issues of *PDS de novo*. The Plaintiffs might persuade this Court or the 10th Circuit to disagree with the Federal Circuit, increasing their chances of having the U.S. Supreme Court agree to hear the issue.[5] But this Court is extraordinarily reluctant to substitute its opinion for the wisdom and experience of the Federal Circuit, particularly where it comes to issues surrounding federal contracting.

The Tucker Act's reposing of exclusive jurisdiction over contracting objections in the Court of Federal Claims grants the Federal Circuit, as the overseer of the Claims Court, a particular degree of familiarity and expertise with the peculiar issues and thorny regulatory environment of contracting-related disputes. Were this Court convinced that the Federal Circuit decided *PDS* hastily, this Court might be inclined to consider the matter anew. But the court in *PDS* had the benefit of not only extensive briefing from both sides, but also the benefit of input from nearly a dozen *amicus curiae* – including SourceAmerica – providing additional advice regarding the issues in dispute. Nor is this a situation in which the issues raised by the Plaintiffs here are orthogonal to those considered and resolved in *PDS*. Rather, the Plaintiffs here present <u>precisely the same</u> issues in this case that the parties presented to the Federal Circuit. To be sure, the Federal Circuit's opinion in *PDS* does not address, point-by-point, the issues the Plaintiffs raise here. But it is clear to the Court that the Federal Circuit evaluated (perhaps tacitly) those issues and ultimately found them unpersuasive. In these circumstances, and particularly in the absence of compelling contrary authority, this Court is inclined to afford *PDS* extremely strong

---

[5] The U.S. Supreme Court denied a request for certiorari in *PDS*.

persuasive value. As such, it rejects the Plaintiffs' contention that *PDS* patently misapplies the law.

Thus, the 2019 Class Deviation cannot be contrary to law because the only legal authority that squarely addresses the question of the relative priorities between JWOD and the VBA is *PDS*. The Plaintiffs are free to believe that *PDS* was wrongly-decided. They are free to believe that *PDS* should be given a narrow reading or that it should be confined to its peculiar facts. They are even free use the Tucker Act to go to the Court of Federal Claims to challenge the VA's decision to re-bid Bayaud's (or any of SourceAmerica's client agencies') contracts, and ultimately, to re-raise their arguments before the Federal Circuit in the hopes of persuading that court to reach a different decision. But currently, *PDS* stands as the most-persuasive -- and indeed <u>only</u> -- authority that squarely considers (and clearly rejects) the arguments the Plaintiffs make here. In short, notwithstanding the Plaintiffs' arguments that *PDS*' reasoning is contrary to law, *PDS* <u>is</u> the law, and the 2019 Class Deviation is consistent with it.[6]

Nor can this Court conclude, in light of the existence of *PDS*, that the VA's 2019 Class Deviation was a decision that was "arbitrary and capricious." A decision is arbitrary and capricious if the agency entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43

---

[6] The Court does not understand the Plaintiffs to argue that the 2019 Class Deviation somehow mischaracterized or misapplied the decision in *PDS*. To the extent they do, the Court rejects such an argument. *PDS*' operative conclusion is crystal-clear: "when a product or service . . . ordinarily would result in the contract being awarded to a nonprofit qualified under JWOD, the VBA unambiguously demands that priority be given to veteran-owned small businesses" instead. 907 F.3d at 1360. The 2019 Class Deviation clearly applies that conclusion.

(1983). The agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* Here, there can be little dispute that the VA based the 2019 Class Deviation on the explication of the Federal Circuit's analysis in *PDS*. Once again, although the Plaintiffs might disagree with the reasoning of the Federal Circuit, but the Court cannot conclude that it was somehow unreasonable for the VA to decide to conform its contracting regulations to the principles articulated in *PDS*, at least until further cases clarified the matter further. Arguably, the VA could have concluded that *PDS* was wrongly-decided and simply refused to follow it, or it could have carefully-parsed the ruling, discarding various pronouncements as *dicta* or distinguishing them on technical or procedural grounds, ultimately deciding to retain its then-existing contracting rules. But this Court cannot conclude that it was arbitrary and capricious for the VA to decide that conclusions reached by an influential federal appeals court on a matter of first impression reflected principles (binding or otherwise) that it would be wise for the VA to follow.[7]

Accordingly, the Defendants are entitled to judgment in their favor on the Plaintiffs' second and third claims for relief.

**D. Remaining claims**

This Court does not believe that extended analysis of the Plaintiffs' remaining claims – a contention that the 2019 Class Deviation violates the Plaintiffs' procedural due process and equal protection rights, and the Plaintiffs' contention that that Class Deviation constitutes discrimination on the basis of disability in violation of the Rehabilitation Act – is warranted.

---

[7] If anything, this Court might be more likely to conclude that it would have been arbitrary and capricious for the VA to <u>not</u> conform its contracting rules to the analysis in *PDS* than it would be for the VA to follow the only caselaw resolving the issue.

Turning to the due process claim, the Court cannot conclude that the Plaintiffs have demonstrated a property interests in the continued receipt of federal contracts. Those claimed property interests do not derive from any fundamental right secured by the Constitution, but from the fact that Congress created certain expectations when it awarded contracting preferences through JWOD.

But what Congress gives, Congress may also take away. The Plaintiffs cite to no authority that affords a party due process relief simply because Congress chose to alter its legislative priorities and reallocate a statutory benefit from one group to a different one. *C.f. Atkins v. Parker*, 472 U.S. 115, 129-130 (1985) (Congressional decision to reduce welfare benefits did not give rise to due process claim by recipients; "the 1981 entitlement did not include any right to have the program continue indefinitely at the same level, or to phrase it another way, did not include any right to the maintenance of the same level of property entitlement. Before the statutory change became effective, the existing property entitlement did not qualify the legislature's power to substitute a different, less valuable entitlement at a later date. As we have frequently noted: '[A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels.... [T]he legislative determination provides all the process that is due')." Moreover, even assuming that the Plaintiffs have a property interest in future contracts it is not the 2019 Class Deviation that divested them of that interest. Rather, it is the enactment of the VBA (as construed by *PDS*) that divested them of certain benefits they previously enjoyed through JWOD. The 2019 Class Deviation does no more than implement the construction of the VBA that the Federal Circuit gave it in *PDS*. The Plaintiffs have not offered

18

any argument that the VBA is itself an unconstitutional abridgement of their due process rights, and thus, the Defendants are entitled to judgment[8] in their favor on the due process claim.

For similar reasons, the Plaintiffs' equal protection claim fails. Assuming for the moment that the 2019 Class Deviation treats JWOD-eligible contractors differently than it treats veteran-owned businesses, it is clear that the VA can articulate a legitimate (and indeed, compelling) reason for doing so: because the VBA (as construed by *PDS*) requires it to do so. Once again, the Plaintiffs' real complaint is with Congress' reallocation of contracting preferences in the VBA, not with any action taken by the VA to comply with that law. Absent a contention by the Plaintiffs that the VBA itself violates the equal protection clause – and no such argument has been presented here – the Defendants are entitled to judgment on this claim as well.

Finally, the Plaintiffs' invocation of the Rehabilitation Act fails for the same reasons.[9] That statute prohibits entities from preventing or discouraging disabled individuals from participating in federally-funded projects if such discrimination occurs because of the

---

[8] This Court need not decide whether it is granting the Defendants' motion to dismiss these claims pursuant to Rule 12(b)(6), granting summary judgment to them under Rule 56, or treating the parties' submissions on the administrative record as comprehensive and thus entering judgment as a matter of law pursuant to Rule 50. The outcome is the same in any event.

[9] The Court has some doubt as to whether – or, at the very least, upon what basis – the Plaintiffs have standing to assert a Rehabilitation Act claim. Neither Bayaud nor SourceAmerica are, themselves, "qualified individual[s] with a disability." 29 U.S.C. § 794(a). They are neither individuals nor do they have any disability as that term is described in the statute. It may be that the Plaintiffs are attempting to assert some form of associational standing on behalf of, say, Bayaud's employees or SourceAmerica's client agencies' employees, but it is not necessarily clear to the Court that any such disabled employees would themselves have standing to assert a Rehabilitation Act claim against the Defendants here based on the Defendants' decision to adjust its contracting preferences. Were the Rehabilitation Act claim to proceed, the Court would examine the question of standing more vigorously, but because the claim fails on its merits in any event, the Court will assume, without necessarily finding, that the Plaintiffs could, if required, make a colorable showing as to their standing to bring a claim under the Rehabilitation Act.

individuals' disabilities. But once again, to the extent that disabled individuals employed by JWOD-eligible entities are being deprived of job opportunities, the 2019 Class Deviation is not the cause of that deprivation; the VBA is. Moreover, there is no evidence in the record to suggest that the VA issued the 2019 Class Deviation for the purpose of preventing disabled people from gaining employment through federal contracting. Rather, even the Plaintiffs concede that the VA issued the 2019 Class Deviation because the *PDS* decision instructed that the VBA granted such contracting preferences to veterans. Thus, nothing in the record supports a claim under the Rehabilitation Act.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** both the Defendants' Motion to Dismiss **(# 59)** (to the extent it raises challenges of subject-matter jurisdiction[10]), and the Plaintiffs' Motion for Summary Judgment **(# 60)**. Upon review of the administrative record **(# 57)** and the parties' briefing, the Court finds that the Defendants are entitled to judgment on their favor on all claims in this action. The Clerk of the Court shall enter such judgment and close this case.

Dated this 25th day of February, 2020.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Senior United States District Judge

---

[10] To the extent necessary, the Court grants the Defendants' motion insofar as it seeks to dismiss the Plaintiffs' non-APA claims on Rule 12(b)(6) grounds.